E. R. BRENNER CO. v. BROOKER ENGINEERING CO.

1. REFORMATION OF INSTRUMENTS—EQUITY—NEW CONTRACTS.
   While equity has power to reform a contract in order to make it conform to the agreement actually made, courts do not make new contracts for the parties.

2. SAME—MERGER OF PAROL AGREEMENT IN WRITTEN ONE—MISTAKE.
   Although back of nearly every written instrument lies a parol agreement, merged therein, the writing controls unless a court of equity, on invocation of its power, finds the writing does not express what the minds of the parties met on, intended, and supposed they had expressed, but which miscarried by mutual mistake.

3. Same—Burden of Proof—Evidence.

The burden of proof is upon the plaintiff to make out a case for reformation and the evidence should be clear and convincing that the contract should be reformed in order to carry out the true agreement of the parties.

4. Same—Mistake as to an Extrinsic Fact.

Reformation of a contract because of a mistake as to an extrinsic fact will not be allowed, although it is one which probably would have caused the parties to make a different contract, because courts cannot make a new contract for the parties.

5. Same—Settlement Agreement Between General Contractor and Subcontractor.

In suit to reform settlement agreement between general contractor and subcontractor after dam construction project was about a third completed whereby settlement was made on subcontractor's attempt at accurate statement of expense to the date thereof, subcontractor would not be entitled to recover in addition to the nearly $17,000 received thereunder an item of over $1,200 for workmen's compensation insurance which subcontractor had become obligated to pay where parties contemplated a refund on such insurance to plaintiff and defendant made no general promise to pay for such item not specifically mentioned in the settlement agreement.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted April 14, 1942. (Docket No. 8, Calendar No. 41,651.) Decided May 18, 1942.

Bill by E. R. Brenner Company, a Michigan corporation, against Brooker Engineering Company, a Michigan corporation, to reform a contract. Bill dismissed. Plaintiff appeals. Affirmed.

*Howard, Howard & Howard*, for plaintiff.

*Frank W. Donovan*, for defendant.

Bushnell, J. Plaintiff, E. R. Brenner Company, a Michigan corporation, as subcontractor, had an

agreement with defendant, Brooker Engineering Company, a Michigan corporation, the general contractor, to furnish materials and perform work on the Pensacola Dam Project in Oklahoma. After the work was about a third completed, delays were encountered and discussions arose over claims for extras, et cetera, whereupon the parties negotiated for a settlement of the agreement. Plaintiff corporation indicated that it would accept reimbursement for the expenses and liabilities of the job, not including office overhead and remuneration for E. R. Brenner's services. During the negotiations tentative figures as to expenses and liabilities were presented to Lester F. Brooker, defendant's president.

It was agreed that a further check on these items should be made on the job and Brenner went to Oklahoma and prepared a schedule of expenses and liabilities which was checked by Roy C. Martin, the vice-president of defendant corporation. A contract based upon this schedule was made which provided for a settlement by the payment by defendant of $16,990.13, "subject to audit." This contract, dated August 16, 1939, in Oklahoma, was signed by Brenner for the plaintiff and Martin for the defendant. A little later the presidents of the two companies discussed the matter and entered into an additional contract based upon what they believed to be the actual expenses and liabilities of plaintiff corporation. This second contract was dated August 24, 1939, and was signed by Brenner and Brooker.

The second contract provided for two equal payments by defendant to plaintiff in the amount of $8,495.02, and stated among other conditions that:

"The amount of settlement is based upon the statement of income and expense attached hereto

as Exhibit 'B'. Party of the second part (plaintiff corporation) represents that to the best of its knowledge and belief said statement of income and expense is true and accurate in every respect and represents that all items of company expense to date, all material expense to July 31, 1939, and all labor expense prior to August 10, 1939, and all taxes and insurance to August 10, 1939, are fully paid or will be paid by party of the second part. Party of the second part will furnish party of the first part (defendant corporation) with any verification of any items on Exhibit 'B' which may be required by it. In addition, party of the second part will pay all items of material and other expense subsequent to August 31, 1939, appearing on Exhibit 'B'. Party of the first part will pay all other bills for materials delivered since August 1, 1939, and all payrolls from August 10, 1939.

"Party of the second part is to remit to party of the first part any credits which may subsequently accrue to it for materials or labor or expense in connection with its said subcontract."

The first payment of $8,495.02 was made at the time of the execution of the contract and the second payment was made in two instalments.

After the execution of the final contract plaintiff discovered several minor items of expense which were not a part of the schedule and, therefore, not included in the total amount of payment required. These items were paid by the defendant corporation. Several months after the execution of the final contract, defendant corporation informed plaintiff corporation that an additional sum of $1,212.99 was due plaintiff corporation's insurance carrier. Prior to this information, both plaintiff and defendant had contemplated that there would be a refund from

plaintiff's insurance carrier on workmen's compensation premiums, et cetera, which plaintiff had prepaid in the sum of $1,007.04. Defendant refused to pay plaintiff's insurance carrier the additional premiums and demanded that plaintiff so do, whereupon plaintiff brought suit to reform the settlement contract and require defendant corporation to pay the additional insurance premiums.

The trial judge, after ascertaining the facts, denied plaintiff's prayer for relief on the ground that the contract limited the amount that defendant was required to pay and that to reform the contract would be making a new agreement for the parties.

The parties made their contract upon the erroneous assumption that the schedule of expenses and liabilities was accurate. But there is insufficient evidence in this record to show that defendant ever agreed to reimburse plaintiff for its expenses and liabilities irrespective of the amount. While equity has power to reform a contract in order to make it conform to the agreement actually made, *Raymond* v. *Auto-Owners' Insurance Co.*, 236 Mich. 393, nevertheless courts do not make new contracts for the parties. As said in *Lee State Bank* v. *McElheny*, 227 Mich. 322, 327:

"Back of nearly every written instrument lies a parol agreement, merged therein, but the writing controls unless a court of equity, on invocation of its power, finds the writing does not express what the minds of the parties met on, and intended, and supposed they had expressed, but which miscarried by mutual mistake."

There is no showing in this record that the minds of parties met on the question of additional insurance premiums. On the contrary, the evidence

shows that the parties never contemplated that there would be an additional insurance premium liability.

The burden of proof is upon the plaintiff to make out a case for reformation and the evidence should be clear and convincing that the contract should be reformed in order to carry out the true agreement of the parties. *Kelly* v. *Israel,* 237 Mich. 526, and authorities therein cited. See, also, *Lyons* v. *Chafey,* 219 Mich. 493.

In the record before us there was at best only a mutual mistake as to an extrinsic fact.

"Still more clearly, if because of mistake as to an antecedent or existing situation the parties make a written instrument which they might not have made, except for the mistake, the court cannot reform the writing into one which it thinks they would have made, but in fact never agreed to make." 2 Restatement, Contracts, p. 969.

If the mistake is with respect to an extrinsic fact, although one which probably would have caused the parties to make a different contract, reformation will not be allowed, because courts cannot make a new contract for the parties. *Lee State Bank* v. *McElheny, supra; DeGood* v. *Gillard,* 251 Mich. 85, and 53 C. J. p. 928.

The facts in the instant case are much like those in *DeVoin* v. *DeVoin,* 76 Wis. 66 (44 N. W. 839). In that case plaintiff, who had been defendant's partner, entered into a written contract by which he agreed to purchase defendant's interest in the partnership for a certain sum and, in addition, pay the liabilities of the partnership. This agreement was based upon a statement of the assets and liabilities. This statement later proved to be inaccurate

in that it understated the liabilities by a considerable amount. The court said:

"The alleged mistake in the written agreement is not that the instrument does not express the terms of the contract just as the parties directed it to be written, but that there was a mistake in one subject-matter of the contract, to-wit, the amount of the firm liabilities, but for which mistake no contract would have been made, or, if made, its terms would have been different. Hence, conceding the mistake to have been mutual, it is not perceived how an action to reform the instrument can be maintained. If a promise by defendant to repay the $500 cannot be proved, we strongly incline to the opinion that, whether the mistake was or was not mutual, the only remedy of plaintiff was promptly to rescind the contract, or institute appropriate proceedings to that end."

See, also, 2 Pomeroy's Equity Jurisprudence (1st Ed.), pp. 343–344.

We are unable to find in this record an agreement on the part of defendant corporation to reimburse the plaintiff corporation for the amount in question, and we do not find facts, even if taken most favorable to plaintiff, that will justify reformation of the contract.

The decree entered upon the findings of the trial judge is affirmed, with costs to appellee.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred.