# STATE OF MICHIGAN

# COURT OF APPEALS

SPARTAN EQUITIES HIGH YIELD FUND I,
LLC,

                    Plaintiff-Appellee,

v

BRIAN OWENS,

                    Defendant-Appellant,

and

KRISTI R. HAMMACK, also known as KRISTI
R. OWENS,

                    Defendant.

UNPUBLISHED
January 17, 2017

No.   328942
Monroe Circuit Court
LC No.   14-137042-CH

Before:  RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

In this action seeking reformation of a mortgage and foreclosure on the reformed mortgage, defendant Brian Owens[1] appeals as of right the trial court order granting summary disposition in favor of plaintiff and reforming the mortgage.  We affirm.

## I.  FACTUAL BACKGROUND

Before September 1996, defendant individually owned property in Monroe County with the common address of 126 Virginia Court, Ash Township, Michigan, and the following legal description: "Lots 19, 20, 21, 29, 30, and 31, Shirrmacher Subdivision, according to the plat thereof as recorded in Liber 6, Page 31 of Plats, Monroe County Records."  A survey of the

---

[1] For the sake of simplicity, we will refer to Brian Owens as "defendant" in this opinion because defendant Kristi R. Hammack, also known as Kristi R. Owens, was dismissed without prejudice from this case pursuant to a stipulated order between herself and plaintiff, and she is not a party to this appeal.

-1-

property indicated that the parcel included two structures: a house that extended across lots 20 and 21 and a garage that primarily sat on lot 21 but extended approximately 10 feet into the northernmost part of lot 29. In September 1996, defendant quit claimed the entire parcel to himself and Kristi Hammack "as joint tenants with full rights of survivorship."

Subsequently, defendant and Hammack, as joint tenants, conveyed the vacant portion of the property to a third party.[2] When the sale failed, the third party conveyed the vacant portion back to defendant and Hammack through a quit claim deed that included the following legal description: "Lot 29 except for the Northerly 12 feet, Lot 30 and 31, Schirrmacher Subdivision, according to the plat thereof as recorded in Liber 6, Page 31, of Plats, Monroe County Records." Notably, that legal description only encompassed the lots of the property that were vacant.

Defendant and Hammack eventually married, but later divorced. In the judgment of divorce, defendant was awarded sole ownership of the property at 126 Virginia Court. Approximately three years after the divorce, defendant sought to refinance his interest in the subject property. Defendant obtained a $75,000 loan from Washington Mortgage Company in 2004, which was secured by a mortgage. The mortgage indicated that it was to encumber property with the common address of 126 Virginia Court, but it only listed the legal description covering the vacant lots, not the entire parcel. The mortgage was later assigned to plaintiff. Defendant defaulted on the mortgage, and plaintiff brought the instant action seeking foreclosure and reformation, as plaintiff had discovered that the legal description contained in the mortgage did not encumber the entire parcel, leaving out the lots on which the house and garage were erected.

Plaintiff filed a motion for summary disposition under MCR 2.116(C)(10), arguing that there was clear and convincing evidence of a mutual mistake that permitted reformation of the mortgage. In response, defendant asserted that plaintiff's position was without merit because he only intended to encumber the vacant portion of the property, as specifically described in the mortgage. The trial court agreed with plaintiff and entered an order granting summary disposition in favor of plaintiff, requiring the mortgage to be reformed to reflect an encumbrance of the entire parcel and ordering a judicial foreclosure in accordance with the reformed mortgage.

Defendant now challenges the trial court's grant of summary disposition.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion under MCR 2.116(C)(10) "requires the adverse party to set forth specific facts at the time of the

---

[2] Apart from defendant's unsupported statements in his brief in response to plaintiff's motion for summary disposition, there is no evidence of this attempted sale or completed transfer in the lower court record. A deed conveying the property to the third party was not recorded with the Register of Deeds.

motion showing a genuine issue for trial." *Bernardoni v City of Saginaw*, 499 Mich 470, 473; 886 NW2d 109 (2016). Thus, "[b]ecause a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, the circuit court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). However, a reviewing court only may consider substantively admissible evidence. *Bernardoni*, 499 Mich at 473. "When the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013) (quotation marks and citation omitted). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Id.*

In addition, "[w]e review equity cases de novo, but we will not reverse or modify the judgment unless convinced that we would have reached a different result had we occupied the position of the trial court." *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 394; 729 NW2d 277 (2006). See also *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008) ("[W]hether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo.").

## III. ANALYSIS

Defendant challenges the trial court's grant of summary disposition in favor of plaintiff and reformation of the mortgage on two grounds: (1) summary disposition was improper because defendant denied that there was a mutual mistake and confirmed that he only intended for the three lots listed in the mortgage to be encumbered by the mortgage, and (2) plaintiff failed to meet its burden of proving a mutual mistake by clear and convincing evidence, such that the trial court improperly rewrote the contact between the parties. We disagree.

"Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake, accident, or surprise." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008). In that vein, Michigan courts will not "hesitate . . . to reform contracts . . . where there has been a mutual mistake of fact." *Goldman v Century Ins Co*, 354 Mich 528, 532; 93 NW2d 240 (1958). See also *Etherington v Bailiff*, 334 Mich 543, 552; 55 NW2d 86 (1952) ("There is abundant authority for reforming a deed or mortgage which, through error, fails to express the result of the meeting of the minds of the parties, particularly when it is clear that the description fails to embody the clear, undisputed visual standard of the parties."). However, "[i]n considering whether the trial court properly ordered reformation under the circumstances, we are mindful that courts are required to proceed with the utmost caution in exercising jurisdiction to reform written instruments." *Olsen v Porter*, 213 Mich App 25, 28; 539 NW2d

523 (1995). Therefore, given this requisite caution, "a plaintiff must prove a mutual mistake[3] . . . , or mistake on one side and fraud on the other, by clear and convincing evidence" in order to obtain reformation. *Casey*, 273 Mich App at 398. See also *Ross v Damm*, 271 Mich 474, 480-481; 260 NW 750 (1935); *Johnson Family Ltd Partnership*, 281 Mich App at 379-380, 381-383 (explaining the different types of mistakes of law and the likelihood of each type being reformed); *Olsen*, 213 Mich App at 29. Likewise, because the primary concern in determining whether to reform an instrument is whether it expressed "the true intent of the parties," *Olsen*, 213 Mich App at 29, "[t]he burden of proof is upon the plaintiff to make out a case for reformation and the evidence should be clear and convincing that the contract should be reformed in order to carry out the true agreement of the parties," *E R Brenner Co v Brooker Engineering Co*, 301 Mich 719, 724; 4 NW2d 71 (1942). Evidence fulfills the "clear and convincing" standard if it "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks and citation omitted; alterations in original).

Defendant contends that the trial court's grant of summary disposition and reformation of the mortgage was improper because the record did not include clear and convincing evidence that he and Washington Mortgage intended the mortgage to encumber the entire parcel of property. We disagree. The record clearly reveals that defendant and Washington Mortgage intended to encumber all six lots.

The legal description in the mortgage only described the vacant lots, omitting the lots that contain the house and garage, while still referencing the common street address. Nevertheless, the appraisal commissioned by Washington Mortgage before it provided the loan specifically considered the house and garage and expressly discussed the flooring, walls, and trim found in the house. Likewise, in considering comparable properties in order to fully appraise defendant's property, the appraiser only noted other properties that had houses; the appraiser did not consider vacant lots. Accordingly, the documentation related to the appraisal provides clear and convincing evidence that Washington Mortgage intended that the mortgage would be secured by property that included the house. If Washington Mortgage only intended to encumber the vacant, undeveloped lots, it would have been pointless to appraise the lots that encompassed the house.

Furthermore, despite defendant's arguments to the contrary, his intent prior to signing the mortgage also is clear from the documentary evidence. Before receiving the loan and mortgage, defendant was required to read, review, and sign numerous documents provided to him by Washington Mortgage. During that process, defendant signed several documents that indicated his intent to live on the mortgaged property and occupy the house as his primary residence. One document warned defendant that if he obtained the loan, the lender would have a mortgage on

---

[3] "A mutual mistake may be one of fact or one of law." *Johnson Family Ltd Partnership*, 281 Mich App at 379.

-4-

his "home" and that default on that mortgage could cause him to lose his home. Defendant also signed a "Borrower's Certification" form, which certified that he "intends to occupy the property stated as the property address referenced above." The form referenced the 126 Virginia Court address, but it did not include a legal description. In addition, defendant was required to purchase hazard insurance in order to cover the replacement costs of the improvements on the property, even though the vacant lots undisputedly contained no improvements. Defendant also signed a form—indicating that he was doing so under oath and subject to perjury charges— which stated that he would occupy the mortgaged property as his "home." Defendant also filled out a Universal Residential Loan Application, in which he indicated that (1) he was seeking a $75,000 loan and lived at 126 Virginia Court; (2) he already had $45,529 in debt secured by the property, and that he was seeking to refinance the property in order to "cash out" that debt; (3) he "intend[ed] to occupy the property as [his] primary residence"; and (4) under the "ASSETS AND LIABILITIES" section of the application, that the subject property was valued at $160,000, constituting the value of the entire, six-lot parcel. In other words, defendant did not list the vacant lots and the developed lots as separate parcels.

Defendant argues that this Court should not rely on these documents because they only indicate the common address (*i.e.*, 126 Virginia Court) where defendant did, in fact, reside. However, again, several of those documents used the word "home" to describe where defendant would live, and it is undisputed that there was no house—or any residential structure at all, for that matter—on the property that was covered by the legal description in the mortgage. Therefore, defendant's argument, which is unsupported with any admissible evidence, see *Bernardoni*, 499 Mich at 473, that he understood the forms to mean that he was only mortgaging the vacant lots, but still would live in the house on the unmortgaged portion of the property, is belied by the fact that he repeatedly indicated in writing—at the time that he applied for and received the mortgage—that he would be living in a "home" on the mortgaged property.

As previously mentioned, the most telling document indicated that defendant had been sworn and he understood that was signing the document under the threat of federal perjury charges. With that understanding, defendant expressly agreed that he would be using the mortgaged property as his "home." It is only reasonable to assume that defendant read that document closely to ensure that he had not perjured himself. Further, although language solely referencing the common address of the property had the potential of causing some confusion regarding the specific property to which the documents referred, the same cannot be said with regard to defendant's repeated confirmations that he would be living in the "home" on the mortgage property. In signing those documents, defendant revealed his intent to encumber the entire property because, again, there is no dispute that defendant was aware that the residential structure was not on the vacant lots.

In addition, the vacant lots did not have a separate address. Rather, every legal description—whether only describing the vacant lots or the entire parcel—used the common address of 126 Virginia Court. Property taxes also were assessed on the full, six-lot parcel as a whole, not as two separate parcels—one developed, one vacant—for tax purposes.

Contrary to his characterization of the record, defendant failed to proffer any evidence in the trial court that clearly or explicitly confirmed that his intent was to encumber the three vacant lots. He did not present an affidavit or identify any other evidence that unambiguously

confirmed his now-claimed intent when the mortgage was executed, which might have established a genuine issue of material fact for trial. See *Bernardoni*, 499 Mich at 473; *Joseph*, 491 Mich at 206; *Pioneer State Mut Ins Co*, 301 Mich App at 377.

Therefore, although it is apparent that defendant seeks to have the benefit of only having the vacant portion of his property encumbered now that he is in default, the record plainly reveals his intent to encumber the entire parcel. The documentary evidence submitted by the parties provided clear and convincing evidence that both defendant and Washington Mortgage intended to encumber the entire parcel of land owned by defendant at 126 Virginia Court under the mortgage. See *E R Brenner Co*, 301 Mich at 724; *Casey*, 273 Mich App at 398. Given this clear and convincing evidence of a mutual mistake, and the absence of any genuine issue of material fact, the trial court properly granted summary disposition in favor of plaintiff and ordered reformation of the mortgage. See *Bernardoni*, 499 Mich at 473; *Johnson Family Ltd Partnership*, 281 Mich App at 371-372.

## IV. CONCLUSION

Defendant has failed to establish that his claims warrant relief.

Affirmed.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto