# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT MILLER and DIANE MILLER,

        Plaintiffs-Appellants/Cross-
Appellees,

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee/Cross-
Appellant.

UNPUBLISHED
August 2, 2016

No. 325885
Tuscola Circuit Court
LC No. 12-027312-CK

Before: JANSEN, P.J., and SERVITTO and M. J. KELLY, JJ.

JANSEN, P.J. (*concurring in part and dissenting in part*).

I concur with the majority in all respects except with regard to its determination that the trial court properly granted reformation of the insurance contract. I do not believe that the circumstances of this case warrant reformation on the basis of a mutual mistake. Therefore, I would reverse the trial court's order granting plaintiffs' motion for reformation of the insurance contract and remand for further proceedings.

"Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake, accident, or surprise." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008).

> Courts will reform an instrument to reflect the parties' actual intent where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on one side and fraud on the other, the instrument does not express the true intent of the parties. [*Olsen v Porter*, 213 Mich App 25, 29; 539 NW2d 523 (1995).]

In other words, "[t]o obtain reformation, a plaintiff must prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence." *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006). A unilateral mistake by itself is not sufficient for the court to grant reformation. *Id*. Similarly, "[a] mistake in law—a mistake by one side or the other regarding the legal effect of an agreement—is not a basis for reformation." *Id*. A party seeking reformation on the basis of a mutual mistake must prove the

-1-

mistake by clear and satisfactory evidence. *Johnson*, 281 Mich App at 379. A mutual mistake may be a mistake of law or a mistake of fact. *Id*. A mistake of fact is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Ford Motor Co v Woodhaven*, 475 Mich 425, 442; 716 NW2d 247 (2006). "[M]istakes of law are divided into two classes: mistakes regarding the legal effect of the contract actually made and mistakes in reducing the instrument to writing." *Johnson*, 281 Mich App at 379-380.

> In the former, * * * the contract actually entered into will seldom, if ever, be relieved against unless there are other equitable legal features calling for the interposition of the court; but in the second class, where the mistake is not in the contract itself, but terms are used in or omitted from the instrument which give it a legal effect not intended by the parties, and different from the contract actually made, equity will always grant relief unless barred on some other ground, by correcting the mistake so as to produce a conformity of the instrument to the agreement. [*Id*. at 380 (citations and quotation marks omitted).]

I believe that the trial court improperly granted plaintiffs' request to reform the insurance contract to list Diane as a named insured because plaintiffs failed to establish a mutual mistake. Instead, the evidence establishes that the parties intended for the insurance policy to cover Diane, and the insurance policy covered Diane for over five years. The insurance policy listed Robert as the named insured. The insurance policy provided, in relevant part, that an "insured person" under the policy included the named insured, as well as residents of the named insured's household, including the named insured's spouse. The policy also provided, in relevant part:

> We cover personal property owned by an **insured** while it is anywhere in the world. After a covered loss and at your request, we will cover personal property owned by:
>
> 1.  others while the property is on the part of the **residence premises** occupied by an **insured**;

Accordingly, defendant contended that Diane's personal property was not covered by the insurance policy at the time of the fire because she was not an insured person. This was because she was neither a named insured nor a member of the named insured household, and her property was not on the residence premises occupied by the named insured. In addition, the policy only provided for dwelling, loss of use, and landscaping coverage for the "residence premises" in which the named insured resides. Defendant contended that because Robert did not reside at the home, it was not a residence premises for the purpose of coverage under the policy. Defendant therefore argued that the damage to the house was not covered.

The November 17, 2003 application reflects that Robert was listed as the first named insured, and there are no additional named insured parties. Diane signed the application as the applicant in two different places. The majority concludes that the fact that Diane signed as the applicant indicates a mutual mistake regarding whether she was a named insured. However, the parties may have decided to list Robert as the only named insured for a number of reasons, and there is no indication in the document that the failure to name Diane as a named insured

constituted a mutual mistake. Instead, the application reflects that the parties intended for both Robert and Diane to be covered under the policy, but also intended for Robert to be the only named insured.[1] Subsequent communications between defendant and plaintiffs over the next several years listed Robert as the only named insured. There is no indication that plaintiffs ever raised the issue that Robert was the only named insured listed on the documents they received from defendant, which further shows that there was no mistake of fact or law.

The majority concludes that Diane's affidavit also provides evidence of a mutual mistake, but Diane's affidavit supports defendant's argument that the insurance agreement reflected the parties' intent. Diane stated in her affidavit that she went to the local Farm Bureau office in 2003 in order to apply for a policy to cover her home. She stated that she advised Soper that she "wanted complete coverage for [her] husband and [her] home and belongings." She further stated, "I made clear my intentions to Mr. Soper to obtain coverage for both the home and personal property for *both* my husband and myself." According to Diane, Soper informed her that the policy "would provide complete coverage for our home and our personal property." The insurance policy did just that. Diane was completely covered as the spouse of the named insured at the time the insurance policy went into effect. In fact, Diane remained covered until Robert moved out of the home five years later. Therefore, defendant issued the policy the parties agreed to at the time they entered into the insurance agreement. Although Diane was not covered after Robert moved out of the home, this subsequent change of circumstances does not establish that the instrument did not express the true intent of the parties at the time they entered into the agreement. Furthermore, Diane's unilateral mistake regarding the legal effect of the insurance agreement does not constitute a mutual mistake warranting reformation. Instead, Diane's affidavit evidences the parties' mutual intent for the policy to cover Diane, and the insurance agreement reflected that agreement because Diane was covered under the policy at the time it was executed.

I also do not believe that Diane's statements in her affidavit regarding her discussion with Soper in 2009 establish a mutual mistake at the time the parties entered into the insurance agreement. Diane stated in her affidavit that she went to Soper's office in January 2009 or February 2009 following her separation from Robert in order to make a premium payment. She asked his support staff if she was still covered under the policy even though her husband was no longer living with her in their home, and Soper replied that she was completely covered. However, Soper's statements to Diane over five years after defendant issued the insurance policy are of no moment because they do not establish a mutual mistake of fact or law at the time the insurance agreement was entered into. See *Lenawee Co Bd of Health v Messerly*, 417 Mich 17,

---

[1] Plaintiffs point out in their brief on cross-appeal that defendant produced two versions of the application, including one in which Diane was listed as a qualifying named insured or spouse, and one in which her name was crossed out. Regardless of when or why the altered version of the application was created, the application listed Diane as a qualifying named insured *or spouse*, which is consistent with the remainder of the application listing Robert as the only named insured. Furthermore, the section at issue involved whether the named insured or spouse qualified for various credits and did not determine which persons were insured under the policy.

24; 331 NW2d 203 (1982) ("The erroneous belief of one or both of the parties must relate to a fact in existence at the time the contract is executed."). Instead, plaintiffs contend that Diane intended for her and Robert to be covered by the policy, and Diane was covered by the policy after it went into effect. Therefore, I do not believe that plaintiffs established a mutual mistake by clear and satisfactory evidence.

Accordingly, I would reverse the order granting plaintiffs' motion for reformation of the insurance contract and remand for further proceedings.


/s/ Kathleen Jansen